# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Morgan,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>State of Arizona, Arizona Department of Corrections, *et al.*<br><br>　　　　Defendants. | CV-06-0346-TUC-FRZ (JCG)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendants' Motion to Dismiss filed on October 16, 2006. (Doc. No. 17.) On January 10, 2007, Plaintiff responded to Defendants' Motion to Dismiss and filed a Motion for Leave to Amend the Complaint. (Doc. No. 27.)[1] Defendants filed a Reply to Plaintiff's Response to Defendants' Motion to Dismiss and a Response to Plaintiff's Motion to Amend on January 25, 2007. (Doc. No. 30.) Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Guerin for a report and recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order granting Defendants' Motion in part and granting Plaintiff's Motion to Amend.

**Factual Background**

While in the custody of the Arizona Department of Corrections in 1999, Plaintiff shared a cell with Inmate James Seville. (Complaint, ¶ 12.) During Plaintiff's imprisonment, Plaintiff cooperated with the Maricopa County Sheriff's Department in the investigation,

---

[1] Plaintiff amended his Response on January 26, 2007, supplementing the record with an amended affidavit. (Doc. No. 31).

arrest and prosecution of Seville. (Complaint, ¶ 15.) In 2002, while Plaintiff was still imprisoned, his status as an informant was leaked to the press, and Plaintiff was moved into protective custody until his release later that same year. (Complaint, ¶16, Plaintiff's Response to Defendants' Motion to Dismiss ("Response") at 1-2.)

In 2004, Plaintiff was re-incarcerated and placed in administrative protective custody for ninety days in the Eyman Complex in Florence, Arizona. (Complaint, ¶17.) Pursuant to ADOC guidelines, Plaintiff underwent an Involuntary Protective Segregation review during this time. (Response at 2.) According to Plaintiff, he was told by an unknown corrections officer that he no longer needed to be in protective custody and that he would most likely be placed in a minimum security yard. (Response at 2.) Following his IPS review, Plaintiff was sent to the SMU II facility, where he met with an unknown corrections officer to complete an initial classification review. The unknown corrections officer informed Plaintiff that he would be placed in a medium, rather than a minimum, security yard. (Response at 2.) When Plaintiff expressed concern that, because of his status as an informant, he would not be safe in a medium security yard, the unknown corrections officer allegedly agreed that Plaintiff was better off in protective custody. (Response at 2.).

On August 16, 2004, the Warden of the ASPC-Eyman Complex completed a Protection Segregation Decision Worksheet and determined that Plaintiff did not need to be placed in protective custody. (Response at 2-3.) According to Plaintiff, unknown ADOC officers once again informed Plaintiff that he would most likely be placed in a minimum security yard. (Response at 3.) Relying on these representations, Plaintiff waived his right to appeal the Warden's determination that protective custody was not necessary. (Response at 3.)

Plaintiff then received notice that he would be housed in a medium security yard at the Winchester Unit. (Response at 3.) According to Plaintiff, on October 18, 2004, he submitted an emergency grievance addressed to the Deputy Warden or Warden objecting to his placement in a "high medium yard in Tucson." (Response at 3.) Plaintiff claims that his grievance was refused by an unknown corrections officer who concluded that Plaintiff's

1 complaint was regarding his classification and was therefore outside the scope of the
2 ADOC's Inmate Grievance System, as governed by Department Order 802.

3 Defendants claim that the emergency grievance form disclosed by Plaintiff after
4 Defendants' Motion to Dismiss was filed is not genuine; according to Defendants, the
5 corrections officer who would have received the grievance in her capacity as Grievance
6 Coordinator has testified that she never received Plaintiff's emergency grievance, has no
7 record of the document being submitted, and that the purported signature of Corrections
8 Officer Gaines on the document does not appear to be genuine. (Defendants' Reply to
9 Plaintiff's Response to Defendant's Motion to Dismiss, ("Reply") at 4.)

10 Plaintiff was thereafter transferred to the Winchester Unit in the ADOC's Tucson
11 Complex. At that time, Defendant Fizer was the Warden of the Tucson Complex, and
12 Defendant Kinsler was the Deputy Warden of the Tucson Complex. (Complaint ¶¶ 3, 4.)

13 In December, 2004, Plaintiff underwent a second reclassification process, which
14 resulted in his remaining in the same yard. Plaintiff's December, 2004 Reclassification Score
15 Sheet includes his written agreement with the Classification Committee's recommendation
16 that he remain at the Winchester Unit. (Reply at 4.) The Score Sheet indicates that Deputy
17 Warden also agreed with the Committee's recommendation, but it does not indicate that
18 Warden Fizer was involved in the process. (Reply at 4.)

19 On March 11, 2005, Dateline aired a segment exploring Seville's criminal case.
20 (Complaint ¶20.) The television program portrayed Plaintiff as a prison informant and
21 included an interview with Seville's attorney, who accused Plaintiff of having a history of
22 manipulating the justice system. (Complaint, ¶ 20.) According to Plaintiff, the Dateline
23 program was aired at the Winchester Unit with the permission and knowledge of Defendants
24 Kinsler and Fizer. (Complaint, ¶23.) Plaintiff alleges that Kinsler and Fizer watched the
25 Dateline program and knew that Plaintiff was housed at the Winchester Unit, but took no
26 steps to protect Plaintiff from retribution by fellow inmates. (Complaint, ¶ 24.) Shortly after
27 the program aired, Plaintiff was attacked and beaten by inmates for being a "snitch."
28 (Complaint, ¶25.)

3

Plaintiff claims that nine days after his assault, he attempted to file a grievance regarding his assault, but that he was informed by Corrections Officer Thomas that the attack was the result of Plaintiff's classification and therefore could not be challenged via the ADOC's grievance process. (Reply at 5.) Plaintiff further claims that when he insisted on filing a grievance regarding his attack, Officer Thomas refused to allow it. (Reply at 5.)

**Procedural History**

On June 30, 2006, Plaintiff filed an Amended Complaint in Pima County Superior Court asserting claims against Defendants ADOC, Warden Greg Fizer and Deputy Warden Howard Kinsler. The complaint presented four claims: (1) negligence and/or gross negligence (against all Defendants), (2) aiding and abetting tortuous conduct (against Defendant ADOC), (3) intentional infliction of emotional distress (against all Defendants), and (4) violation of 42 U.S.C. § 1983 (against all Defendants).[2] (Doc. No. 1.) On July 10, 2006, Defendants removed the action to the District Court of Arizona on the basis of federal question jurisdiction. On October 16, 2006, Defendants filed the pending Motion to Dismiss. On January 10, 2007, Plaintiff filed the pending Motion to Amend Complaint. On March 7, 2007, a hearing on the Motion to Dismiss and Motion to Amend Complaint was held before Magistrate Judge Guerin.

**Standard of Review**

Defendants argue that Plaintiff's complaint should be dismissed pursuant to Rule 12(b), Fed. R. Civ. P. because Plaintiff has failed to exhaust his administrative remedies. In the alternative, Defendants argue that they are entitled to dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., because Plaintiff has failed to state a claim upon which relief can be granted.

**1.   Standard of Review in a Non-Enumerated Rule 12(b) motion to dismiss alleging failure to exhaust administrative remedies**

Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the type of relief offered through the administrative process. *Booth*

---

[2] Although the complaint does not specifically state which Defendants Count 4 is alleged against, it appears from the language of the complaint that Plaintiff intends to allege Count 4 against all Defendants. (Complaint, ¶ ¶ 43-45.)

4

*v. Churner,* 532 U.S. 731, 741 (2001). Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 524.

Exhaustion is an affirmative defense. *Jones v. Bock*, 127 S.Ct. 910, 921 (2007). Defendants bear the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendant "must demonstrate the pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." *Brown v. Valoff,* 422 F.3d 926, 936-37 (9th Cir. 2005). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119-20. Relevant evidence includes "statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case." *Brown*, 926 F.3d at 937. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

**2.      Rule 12(b)(6) Standard of Review**

The dispositive issue raised by a Rule 12(b)(6) motion is whether the facts as pleaded, if established, support a valid claim for relief. *See Neitzke v. Williams*, 490 U.S. 319, 328-329 (1989). In reviewing a motion to dismiss for failure to state a claim, this Court's review is limited to the contents of the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Id*. A complaint should

not be dismissed unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.*

## Discussion

Defendants present six arguments in their Motion to Dismiss. First, Defendants claim that Plaintiff's §1983 claim should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. Second, Defendants argue that Plaintiff cannot state a §1983 claim against ADC, Kinsler or Fizer because they are not "persons" within the meaning of §1983. Third, Defendants contend that Plaintiff's pendent state law claims must be dismissed pursuant to A.R.S. §31.201.01(F). Fourth, Defendants argue that the ADOC is not a jural entity subject to suit and that the ADOC should therefore be dismissed as a party. Fifth, Defendants argue that Plaintiff's negligence count must be dismissed pursuant to A.R.S. §12-802.02(A)(4). Finally, Defendants argue that the complaint fails to state a § 1983 claim against Fizer because Fizer was not involved in the alleged constitutional deprivation.

**1.  Plaintiff's §1983 claim should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing his complaint**

The Prison Litigation Reform Act of 1996 ("PLRA") provides, in relevant part, that "no action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). ADOC's grievance process is governed by Department Order 802. An inmate initiates a grievance by submitting an inmate issue/response form 916-1P ("Inmate Letter") with their assigned CO III within ten working days of the action that caused the complaint. *See* DO 802.08 § 1.1. If an inmate is dissatisfied with the response of the COIII, he has ten days to file a formal grievance through the designated Grievance Coordinator. *See* DO 802.08 § 1.4; DO 802.09 § 1.1.2. If the inmate is not satisfied with the response of the Grievance Coordinator, he may file an appeal to the Warden or Deputy Warden within ten days of receipt of the response. *See* DO 802.09 § 1.3.1. If the inmate is not satisfied with the response of the Warden or Deputy Warden, the inmate can appeal to the Director within ten days of receipt of the response. *See* DO 802.09 § 1.4.1. The Director

6

is required to respond within thirty days, and the Director's response is final, thereby exhausting available administrative remedies through the Department's Inmate Grievance System.

The uncontradicted evidence before the Court indicates that Plaintiff failed to exhaust his administrative remedies. Following his attack, Plaintiff did not properly initiate a grievance because he failed to submit an inmate issue/response form 916-1P. Plaintiff concedes that he failed to properly exhaust his administrative remedies, but contends that Defendants should be estopped from arguing that Plaintiff failed to exhaust his administrative remedies because Defendants' own conduct induced Plaintiff's failure. Specifically, Plaintiff contends that he was deterred from pursuing a grievance on three occasions: (1) On August 16, 2004, when unknown ADOC officers informed Plaintiff that he would most likely be placed in a minimum security yard and, in reliance on these representations, Plaintiff waived his right to appeal the Warden's determination that protective custody was not necessary; (2) on October 18, 2004, when Plaintiff submitted an emergency grievance addressed to the Deputy Warden or Warden objecting to his placement in a "high medium yard in Tucson," but his grievance was refused by an unknown corrections officer who concluded that Plaintiff's complaint was regarding his classification and was therefore outside the scope of the ADOC's Inmate Grievance System, as governed by Department Order 802; and (3) on or about March 20, 2005, when Plaintiff attempted to file a grievance regarding his assault, but that he was informed by Corrections Officer Thomas that the attack was the result of Plaintiff's classification and therefore could not be challenged via the ADOC's grievance process and, when he insisted on filing a grievance regarding his attack, Officer Thomas refused to allow it.

Of the three incidents identified by Plaintiff, only the third is relevant to the Court's inquiry. Although Plaintiff categorizes his complaint against ADOC as one regarding improper classification, it is more properly categorized as a complaint regarding the conditions of Plaintiff's confinement. Although Plaintiff claims that he expressed concern regarding his classification as "medium security" in August and October 2004, in December

of that same year Plaintiff agreed in writing with the Classification Committee's recommendation that he remain in medium security in the Winchester Unit. (Reply at 4.) More importantly, the incident that forms the basis of Plaintiff's complaint is not the fact that Plaintiff was classified in a medium security yard, but rather his allegation that prison officials did not take steps to protect him following the Dateline broadcast. Thus, the only issue before the Court is whether Defendants should be estopped from arguing that Plaintiff failed to exhaust his administrative remedies with respect to his attack because of Officer Thomas' alleged March 20, 2005, statement to Plaintiff that the attack could not be challenged via the ADOC's grievance process.

Although the Ninth Circuit has not directly addressed application of the doctrine of equitable estoppel as a defense to a claim of failure to exhaust administrative remedies, the Circuit has held that a remedy is not "available" if the prisoner has been "reliably informed by an administrator" that no remedy exists. *See Brown*, 422 F.3d at 935. This case, however, does not fall within that exception because, given the circumstances, Officer Thomas' alleged statement to Plaintiff does not amount to "reliable information from an administrator." It is undisputed that Plaintiff was familiar with the prison grievance system: as Plaintiff's counsel argued during oral argument, "Mr. Morgan's been in and out of prison quite a bit. He's very familiar with the procedures and processes ...he knows how the system works." (Tr. at 11.) Plaintiff admits that when Officer Thomas informed him that he could not challenge his classification through the prison grievance system, Plaintiff stated that he wanted to file a grievance despite Officer Thomas' warning. (Response, Ex. A.) Although Plaintiff states in his affidavit that Officer Thomas refused to allow him to file his grievance, he does not contend that this refusal actually prevented him from filing. (Response, pgs. 5-6, stating that COIII Thomas "informed Morgan that since Morgan's grievance dealt with his classification, it could not precede through the grievance process ...Morgan reasonably believed that he was not able to grieve his classification as a result of the information that ADC provided to Morgan.") Moreover, even if Morgan did intend to argue that he attempted to file a grievance but Officer Thomas refused to allow it, that argument is insufficient, because

Morgan has not presented any evidence demonstrating that a prisoner cannot file a grievance without the permission of his COIII.

In addition, the evidence submitted by Plaintiff in support of his estoppel claim is insufficient when viewed in light of the purpose of the PLRA. The only evidence presented by Plaintiff in support of his claim that COIII Thomas told Plaintiff that he could not file a grievance is Plaintiff's own affidavit. The purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. " *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (citations and internal quotations omitted). If an inmate could subvert the exhaustion requirements of the PLRA by simply submitting an affidavit to the Court stating that the inmate did not participate in the prison's grievance process because a corrections officer told him not to - without more, the purpose of the PLRA would be significantly undermined.

Accordingly, the Magistrate Judge recommends finding that Plaintiff failed to exhaust his administrative remedies with respect to his § 1983 claim and that Defendants are therefore entitled to dismissal of Count 4 of Plaintiff's complaint. Because Defendants are entitled to dismissal on this ground, the Court need not consider Defendants' alternate argument that Plaintiff cannot state a claim against ADC, Kinsler and Fizer because they are not "persons" within the meaning of §1983. The Court also need not consider Defendants' alternate argument that Plaintiff cannot state a claim against Fizer under §1983 due to Fizer's lack of involvement in the alleged constitutional deprivation.

**2. Plaintiff should be permitted to amend his complaint in order to bring his pendent state law claims into compliance with A.R.S. §31-201.01(F).**

Defendants contend that Plaintiff's state law claims must be dismissed because they are alleged against the ADOC, Fizer and Kinsler, despite the fact that A.R.S. § 31-201.01(F)

9

mandates that "[a]ny and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state." Plaintiff concedes that A.R.S. § 31-201.01(F) applies (Tr. 16), but argues that he should be permitted to amend his complaint to substitute the State as Defendant with respect to Plaintiff's state law claims.

Rule 15(a), Fed. R. Civ. P., provides that a party may amend a pleading following the filing of a responsive pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In the present case, there is no evidence before the Court to suggest that Plaintiff's failure to name the state as a party in compliance with A.R.S. § 31-201.01(F) was the result of undue delay, bad faith or dilatory motive. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff has not "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed," nor will Defendants suffer "undue prejudice...by virtue of allowance of the amendment." *Id.* In addition, the State is on notice of Plaintiff's claims, because the Arizona Attorney General's Office defends actions filed against the State, its agencies and its officers, and has appeared in this matter on behalf of all Defendants. *See* A.R.S. § 41-193 . Because it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities," the Magistrate Judge recommends that the Court permit amendment of the complaint. *Id.* at 181.

Defendants contend that amendment of the complaint would be futile, and therefore the Court need not permit amendment. *See Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996). According to Defendants, if Plaintiff amends the complaint to name the State as a party, Defendants will be entitled to dismissal of the complaint as alleged against the State because the Eleventh Amendment protects the State from being sued in federal court without its consent. Defendants waived their Eleventh Amendment immunity, however, by removing this action to federal court. *See Embury v. King*, 361 F.3d 562, 566 (9th Cir. 2004) ("removal itself affirmatively invokes federal judicial authority and therefore waives Eleventh Amendment immunity from subsequent exercise of that judicial authority"). This is true

10

despite the fact that the complaint named the ADOC, rather than the State, when it was removed. *See id.* ("The removal is the waiver, regardless of whether ...the waiver could also have been effected by subsequent events. Allowing a State to waive immunity to remove a case to federal court, then "unwaive" it to assert that the federal court could not act, would create a new definition of chutzpah.")[3] In the alternative, Defendants may seek to remand this case back to state court.

**3. The ADOC is not a jural entity subject to suit and the ADOC should therefore be dismissed as a party.**

If the District Court finds that Plaintiff failed to exhaust his administrative remedies with respect to Plaintiff's § 1983 claim, and allows Plaintiff to amend his complaint in order to allege his state law claims against the State of Arizona, rather than Defendant ADOC, then the District Court need not reach the issue of whether the ADOC is a jural entity subject to suit. If, however, the District Court elects to reach this issue, the Magistrate Judge recommends that ADOC be dismissed on this ground.[4]

State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit. *See Grande v. Casson*, 50 Ariz. 397, 72 P.2d 676 (1937) *overruled in part on other grounds* in *State ex rel. Morrison v. Thelberg*, 87 Ariz. 318, 350 P.2d 988 (Ariz. 1960) (action arising under state highway code had to be brought against the State itself, not against the Highway Commission, since the commission had no right to sue or be sued); *Kimball v. Shofstall*, 17 Ariz. App. 11, 13, 494 P.2d 1357, 1359 (1972) (the State Board of Education is "not an autonomous body with right to sue and to be sued"); *Yamamoto v. Santa Cruz County Bd. of Supervisors*, 124 Ariz. 538, 606 P.2d 28 (App. 1979) (action cannot be brought against a state agency that lacks the authority to sue or be sued m its own name). The ADOC is a creation of the Arizona Legislature. *See* A.R.S. §§ 41-1601,

---

[3] "'Chutzpah is that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan.' Leo Rosten, The Joys of Yiddish 94 (1971)." *Embury*, 361 F.3d at 566 n.22.

[4] It appears that Plaintiff has conceded that the ADOC is not a proper party to this action. Plaintiff did not dispute Defendants' claim that the ADOC is a non-jural entity in his Response or at oral argument. (Tr. 16.)

11

*et seq.* As a statutorily created state entity, ADOC has only those attributes and powers the Legislature has prescribed for it. *Cox v. Pima County Law Enforcement Merit Sys. Counsel*, 27 Ariz. App. 494, 495, 556 P.2d 342, 343 (1976). The enabling legislation for ADOC does not authorize it to sue or be sued in its own right as a separate and distinct legal entity.

**4.     Plaintiff's negligence claim must be dismissed pursuant to A.R.S. §12-820.02(A)(4), but Plaintiff has stated a claim for gross negligence.**

Defendants contend that Count One of Plaintiff's complaint must be dismissed because, although it is captioned as a claim for negligence and/or gross negligence, the actual language in the complaint alleges only negligence, and A.R.S.§12-820.02(A)(4) provides that neither a public entity nor a public employee can be liable for injury caused by a prisoner to another prisoner unless the public employee was grossly negligent. In response, Plaintiff claims that the complaint sufficiently sets forth the elements of a gross negligence claim.

In order to state a claim for gross negligence, Plaintiff must allege that Defendants acted with reckless indifference to Plaintiff's safety. *See Armenta v. City of Casa Grande*, 205 Ariz. 367, 372, 71 P.3d 359, 364 (Ariz. App. 2003). A person is recklessly indifferent if he or she knows, or a reasonable person in his or her position ought to know: (1) that his action or inaction creates an unreasonable risk of harm; and (2) the risk is so great that it is highly probable that harm will result. *See id.* Plaintiff's complaint alleges that Defendants "were aware of and/or recklessly disregarded the risk and harm that could befall Plaintiff as a result of dissemination of [information that Plaintiff was an informant] to the public." (Complaint, ¶ 22.) Although the Complaint does not specifically allege the definition of "reckless indifference," *i.e.* that Defendants' actions or inaction created an unreasonable risk of harm or that the risk was so great that it was highly probable that harm would result, the allegation of reckless indifference combined with the captioning of Count One as a claim for gross negligence is sufficient to put Defendants on notice of the nature of the claim. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir., 2001) (stating that Rule 8, Fed. R. Civ. P., sets up a notice pleading system whereby plaintiff is only required to give a short and plain statement of the claim that will give the defendant fair notice of what the claim is and

the grounds upon which it rests). To the extent that Plaintiff intends Count 1 to allege negligence, however, Defendants are entitled to dismissal of Count 1 pursuant to A.R.S.§12-820.02(A)(4).

### Recommendation

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order:

1. GRANTING DEFENDANTS' MOTION TO DISMISS IN PART. Defendants are entitled to dismissal of Count Four of Plaintiff's Complaint because Plaintiff failed to exhaust his administrative remedies. Defendants are also entitled to dismissal of Defendants ADOC, Fizer and Kinsler as to Counts One, Two and Three of the Complaint. Defendants are also entitled to dismissal of Count One of Plaintiff's complaint to the extent that it alleges a claim for negligence;

2. GRANTING PLAINTIFF'S MOTION TO AMEND. Plaintiff should be permitted to amend his complaint in order to allege Counts 1, 2 and 3 solely against the State of Arizona.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-06-0346-TUC-FRZ.**

DATED this 22nd day of August, 2007.

_____
Jennifer C. Guerin
United States Magistrate Judge